### SALTER ag$^t$ CHECKLEY

Jabez Salter plaint. ag$^t$ Anthony Checkley Defend$^t$ in an action of the case for interrupting the s$^d$ Salter in improuem$^t$ of his Land & trespassing upon it & incumbring of it & claiming propriety in it in so doing defameing the s$^d$ Salters honest title of inheritance which hee hath honestly bought & paide for which is to the s$^d$ Salter great damages with other due damages according to attachm$^t$ Dat. aprill 15th 1675 . . . [ 309 ] the Jury . . . founde for the plaint. one Shilling damage & costs of Court. the Defend$^t$ appealed from this Judgement unto the next Court of Assistants & himselfe principall in £5: Benj$^n$ Gibbs & Jn° Sandys Sureties in Fifty Shillings apeice acknowledged themselves respectiuely bound to . . . prosecute his appeale. . . .

[ One of the most important and progressive laws passed by the Massa-chusetts Colony was the "Act for the avoyding all Fraudulent Con-veyances," which required the acknowledgment before a magistrate and registry with a clerk of court, of deeds, mortgages, and other convey-ances of real estate. It is to this act of 1641, as printed in the General Laws and Liberties (1672), pp. 32–3, that Checkley refers in his Reasons of Appeal (S. F. 1403.2).

These lengthy Reasons set out two main defenses: — first, Salter has no title to the land in question; secondly, if he has title, then he and Checkley are tenants in common, and Salter has no cause of action for trespass against his co-tenant.

On the first ground, Checkley declares that the General Court ordered part of Nathaniel Patten's estate divided between Benjamin Bale and

Thomas Patten, and that Bale and Patten entered into articles of agreement accomplishing this partition, each granting to the other his respective part. (This agreement, in S. F. 1403.5, executed 14 December, 1674, shows that part of Bale's share embraces land leased by Nathaniel Patten to Salter.) Checkley claims title under a deed by Thomas Patten including the land in question, which was made under an irrevocable power of attorney from his father, John Patten, the real owner of the land set off to Thomas Patten in the partition. (See Patten v. Dyer and Patten v. Winsley, above, pp. 373, 377.) As for Salter's title, Checkley begins by insisting that the deed to Salter from Bale includes only the premises leased to Salter by Nathaniel Patten before his death, and continues:

The Land in controversy is not in that lease nor was it in the tenure & occupation of Salter therefore hee hath no title to it, let him shew his lease & there it is not contained — & for possession I had it before Salter — my Deed was acknowledged & Recorded the 4th of January 1674. & hee had livery of Seizin the 9th of the same Jan. which is full. 5. dayes after & his Deed not acknowledged untill the 25th of Jan. which is 20. dayes after mine, Now per o[r] Law a title is not good untill either possession is given or the Deed acknowledged & Recorded. See Law. title Convayances Deeds and writings Sect. 4. hee hath no title at all for bee it more or Less then $17\frac{1}{2}$. foote broad or Less then 134. foote in length; yet it is neither more or less then what is contained amply in the Lease & what was in the tenure & occupation of Salter — heres nothing at all appeares by the Lease & the possession & title of the land in controversy is in Anthony Checkly's hand yet hee cast, which J conceive is a fundamentall Error in the former Jury & a Sufficient ground for the revertion of the Judgement.

However, if the land in question is included in the boundaries stated in his deed from Bale, "it is more then hee could doe, it was none of his to Sell," because this land was not set off to Bale in the partition agreement, the measurements determinable in accordance with which Checkley discusses in detail. He appeals to legal principles still much used in 1932:

Jt is a principall in Law & Reason that all Covenants Deeds & obligations shall bee taken in the best Sence for the granto[r] or obliged — Thomas Patten is granto[r] to Ben[n] Bale of this Strip of land — Jf Ben[n] Bale should Say the articles must bee interpreted in the best Sence for mee J am the Grantee relating to this Strip of land, therefore J will haue as much land as can bee called a Strip running upon a direct line &c. as is expres't in the articles taking them in the largest Sence for mee then might hee take away my 22. foote & Leaue mee but 4. inches in the reare — this would bee thought by all men irrationall; Jf J promiss a man a peice of bread will hee haue the Major part of a Loafe is not my promiss performed; although J giue him but $\frac{1}{4}$. of a loafe So is the case here Ben[n] Bale is not denied his Strip of land but hath it — avoiding all extreams hee hath as much & more in the reare proportionable to his front as J haue — As for Jn° Holbrookes Testimony J shall only Say this that hee Sweares only according to his best judgement & understanding w[ch] in my judgement and understanding is no testi-

mony & of no value; testimonys must bee positiue; again words are determined by writing there was another agreement in writing betwixt the verball agreement & these articles w^{ch} m^r Addington had for direction to draw these articles by — & Jn° Holbrooke was in company when the articles was firmed — J can call that oath no bettar then a vaine & unsafe oath — J hope it appeares the land in controversy is not Jabish Salters but Anthony Checkley's — Ben^n Bale never sold it him nor could hee Sell it him, it was not his to Sell, the articles never gaue him 17½ foote in the reare.

The second and alternative ground apparently rests on the assumption that the partition agreement between Bale and Thomas Patten failed to dispose of a strip between the portions set off to each other. Hence Salter and Checkley, as their respective grantees, became like them cotenants of the undivided strip.

Jf so then wee was tenants in common how then could J trespass upon him by Setting a few boards upon the land in common especially considering how little the corners of them stood in the land hee claimeth & how much they stood within the bounds of my own Deed & was movable things & not set up for boundaries, there being no devision as hee pleaded & indeauoured to proue — hee should haue Sued for a devision & could not in my apprehention Sue as hee doth for interrupting the s^d Salter in the improuement of his Land for hee might haue improved mine & his own too if hee had any there & how could J trespass upon his ground & incumber it when J neither hindred him from Setting anything in my ground nor exceeded my ground that J had a Deed for, but my boards was within it; or, how is his title defamed — So that not one term of his attachment is true.

J hope the Honoured Court & Jury haue a right understanding of the case & will plainly See how injuriously Salter hath acted by commencing such a vexatious and chargable Sute against mee for an in considerable bit of land w^{ch} is not worth the fourth part of the charges expended in law about it & might haue bin issued by Bale & Patten without this trouble & charge as J tendred him the s^d Salter & intreated him to Stay till they came from Sea — Not to trouble the Court & Jury with impertinencies J leaue my case to you & Rest

Yo^r humble Servant<br>
Anthony Checkley

These Reasons were rec^d 2^d Septemb^r 1675.

per Js^a Addington Cler

Salter, in his Answer to Checkley's Reasons of Appeal (S. F. 1403.4), replies to the first ground in part as follows:

. . . to proove his first reason he gives three arguments that Salter had noe title. 1st because Salters title gives him noe more then he had by Lease before, and that the appealant harps much upon, as if the title of the land lay grounded upon the Lease, but surely the appealant understands better, therfore the defendant can not understand why he should lay soe much weight on the Lease seeing the defendant never sued the Lease as a tenent nor made any use of his Lease in the Court, but only got and proued his title by his deed, his buts and bounds being clearly and firmly expressed in his deed: but if the Lease would any way helpe the appealant as it can not, yet it is too late to bring it in this action because

it was not made use of in the former Court as the plaintiffe very well knows. $2^{dly}$. That himselfe had possession before Salter: but of what? not of Salters title: if he had possession of his owne who doth hinder him. and whereas he lays soe much weight on the antiquity of acknowledgment of a Deed, its true the first acknowledgment with record must take place: but in what case? not in such a case as this: if Salter had derived his title from Patten his argument might have had some weight in it, but Salter derived his title from Bale's which is an other man, and the appealant had noe deed from Patten before the division therefore the law about the first recording can take noe place here. $3^{dly}$. from possession. the appealant saith he had possession of this land in contraversie before Salter: if he had it seemes by the virdict of the Iury and Iudgment of the former Court that he possessed that which was not his owne and farther the appealant is very much mistaken in soe saying for Salter had possession of said land a long tyme before. $4^{thly}$. The appealant is pleased to say that Salter's title was not legall, because his deed was not acknowledged before the appealants, but what is that to this action? but if he meanes as he seems to say (or else he speaks not to the case) it was not acknowledged nor possession given before the sute in law herein he is very much mistaken for Salter had his before as will appeare by his deed:

He comments thus on Checkley's argument that a deed should be construed against the grantee:

Againe the appealant saith that if the line be arbitrary, how it should take it of in law, and by good reason be interpreted in the best sense for the Granter and that Patten was the Granter. Answere. But if the appealant consider yet againe he will have reason to thinke that Bales was (if any one) a granter for Bales was possessor of all and that by a County Court act, but after, it pleased the Generall Court to settle Patten in the halfe of it, and themselves agreed on division, therefore Patten noe granter: but for the promis[e] of a peece of bread the argument were good if all the loafe had bin his owne, but the appealant may consider that this instance doth not reach this case for Bales had as much right unto the loafe as Patten.

Salter then replies to the second ground, that of co-tenancy:

$2^d$ Reason. If the land had bin Iabez Salters as to the title, yet he had noe ground to sue me, because it was not divided, therfor[e] tenents at will and then noe trespasse. Ans: The appealant is much mistaken in soe affirming, for Salter denyed it in Court, $2^{dly}$. whereas the appealant saith that Salter should have sued for division and not for trespasse. Ans: Salter did not see reason to goe to the appealant for advice how to state his action. $2^{dly}$. as for sueing for division Salter nether did nor doth know that he ether hath or had any land in partnership with Checkley, for the land was divided before by articles, and where as the appealant doth blame Salter soe much for puting him to soe greate a charge in law and that the land was not worth neere soe much as is spent in law, Surely the appealant may as much blame himselfe as Salter for if he had let Salter enjoy his title the action had not proceeded for Salter used all faire meanes and tendered to leave it to the Townesmen to avoide trouble and had rather bin a looser then to goe to law, the appealant might have let his board stood till this day if he had yeilded the title but he denyed it as plainely appeares all alonge, by which it appears that

Salter did not sue for trespasse only but to keepe and maintaine his title. . . . The premises considered I leave the it to the wisdome of the Court and Iury to determine whither the reasons of Appeale or my answere to them carry in them most weight and remaine

yours and the truth servant

Jabez Salter

There are depositions respecting the dimensions of the disputed land, in S. F. 1403.5–9.

The Court of Assistants (Records, i. 47) confirmed the former judgment.]